Judge Buckner
delivered the opinion of the Court.
In April, 1820, Edwards and Hanna entered .into written articles of agreement, by which they agreed to exchange tracts of land. Edwards was to convey by deed, with general warranty, a tract of one thousand nine hundred and ninety two acres, in Logan county, to Hanna, who was by deed, with the like warranty, to convey to Edwards, a tract of about two hundred and twenty seven acres, near Ilarrodsburgb, in the county of Mercer, known by the name of the Greenville Springs. He bound himself also, to pay Edwards, for the improvements which had been put upon the tract, in Logan, subsequent to Edwards’ purchase of it, from one Catlett; and for the crop, farming, utensils, stock of.all kinds, and the furniture, which should he on said tract, on the day of its delivery. Edwards bound himself in the contract, to pay Hanna for all the improvements, which had been put on the Mercer tract, since the date of Hanna’s purchase of it,from Owings and Bell, and for sucli household and kitchen furniture, crops, farming utensils and stock, as might be *19 on it at the time he received possession of it. Two disinterested men were to be selected, by the contracting parties, to make the valuation of the improvements and property. Hanna executed to Edwards a bond also, for a conveyance of the two hundred and twenty seven acre tract, on or before the 1st of November, 1822.
Edwards, who had purchased the tract in Logan from Catlett, who had purchased it of B. Roberts, procured Roberts to execute a bond to Hanna, binding himself to make a conveyance of it to him.
In March, 1822, Edwards filed his bill in chancery, against Hanna, Roberts and Crockett, demandiag a rescisión of the contract, on the ground of alleged fraud, on the part of Hanna. He charges, that at the time of the contract, Hanna induced him to believe, that he had a clear and unincumbered title, to the tract in Mercer; when, in truth, he had a title to a moiety only. He says, thatpievious to the contract aforesaid, Hanna had conveyed it by deed of Mortgage, dated 16th of April, 1819, to Robert Boyce, to secure the payment of $13000s and in February, 1820, had again mortgaged it to R. Moseby, 53. Harlan, and Samuel Taylor, to secure the payment of §'3500, each of which deeds of mortgage, had been duly recorded; and that Hanna owed Bell, from whom, he had purchased the tract; a considerable portion of the purchase money; all which had been fraudulently concealed from him, at the time of the contract. He further alleges, that Hanna had sold the tract in Logan, for about $24000 worth of produce, to Crockett, to whom, at Hanna’s instance, Roberts had conveyed the title, although, no part of the price had been paid, at, or subsequent to the date of the conveyance, and notwithstanding, he, Edwards, had notified Roberts of the circumstances, and forbid the conveyance.
He charges Hanna with having fraudulently procured persons, in the absence of him, Edwards, to value at very high and exorbitant prices, old injured and useless furniture at the springs, to a large amount; and that, in his absence also, he had taken possession of the land in Logan, previous to the sale to Crockett, with the stock, furniture, produce, &c. thereon, and without notice to him, had caused them tobe estimated,in such a *20 manner; as- great]} to exceed their trae value. He says, that, when he and Hanna entered into the contract, he owed Roberts about $10000, being the remainder of the purchase money, for the Logan tract, for which Roberts held bonds on him and D. M. Heard; a part of which, having been assigned to Hanna were put in suit, and judgments recovered.
He charges Hanna with insolvency, demands an exhibition and proof of his title to the tract in Mercer; and prays, not only the contract between them may be rescinded, but that the conveyance from Roberts to Crockett may be cancelled., lie concludes, with a general prayer for relief.
Hanna, by answer, admitted thewritt''n contract and bond, as set forth. He insists, that Edwards was fully apprized of the mortgages and incumbrances on the Mercer tract, mentioned in his bill, at the time of their contract, that he had then agreed to lift that, held by Boyce; and he, Hanna, was, in consideration thereof to pay the same amount, to Roberts, for the purpose of releasing the tract in Logan, from the lien,which Roberts held on it. He admits the sale to Crockett,and that the purchase money had not been paid; says, that he had transferred Crockett’s bonds to Roberts, in part discharge of the bonds, which Roberts held on Edwards and Heard, and that Roberts refused to convey the land to Crockett, until he had received by assignment, notes on Crockett, to the amount of the money due to him, by Edwards, and until the payment was further secured,by mortgage on one thousand acres, of the best part of the one thousand nine hundred and ninety two acres. He denies all fraud, in the valuation of tie property at the Greenville Springs; saj’s, that Kea-d, who was Edwards’ son-in-law, attended to it, as agent of his father-in-law; and that the overseer of Edwards attended as his agent to the valuation made of the property, on the Logan tract, at each of which times, Edwards was unable to be present, as he was confined, to. the prison bounds. He says, that his property was valued to $10120, and that of Edwards to $1221, and insists, that Edwards had used and destroyed a considerable part of the property received under the contract, at the Springs, and had mortgaged the remainder; so that it was out of his power to return it, upon a rescisión of the- contract,.
*21 He denies thathe is insolvent, and says, that he had discharged the mortgage held by JVioseby, Harlan and Taj lor, and expected to have it released in a few He sets up various claims against Edwards, and prays for a settlement, making his answer a cross-bill, which is unnecessary to notice further, as the circuit court made no decree concerning it, and Hanna is the defendant in error.
Edwards answered this cross-bill, denying that .he had agreed to lift the mortgage to Boyce, says, that Hanna told him at the time of their contract, the mortgage to Boyce was made for no other purpose, but to place the land beyond the reach of his creditors, and that it was the only incumbrance on it. He admits, that he had mortgaged a part of the propcrLy, which he had received from Hanna at the Springs, after Hanna had disposed of that which he got from him in Logan,
Roberts answered, expressing his willingness, that the contract should be rescinded, if he was secured in the payment of the money, due to him, by Crockett, being ‡ 11183, and for which he held a mortgage, &c.
At the Api-jJ term, 1825, Hanna filed an amended answer, in which he says, that Bell had obtained a judgment against him; and under execution issued on it, had caused, the Greenville Springs tract to he sold, and had become the purchaser of ft; that,in 1821, he, Bell, had sold and conveyed it to S. Daviess, J. P. Williams, John Briscoe, G. Briscoe, W. Harrison and A. Fulkerson; with whom, he, Hanna, had made an arrangement, whereby, they were to hold the tract, in trust for him, to be conveyed to such person, as he may direct; whereby all embarrassment arising out of Bell’s claim, was done away; and thathe was endeavoring to procure a release of the mortgage executed to Boyce. By a a e:y irregular mode of proceeding, he calls upon these purcha-ers from Boll, to answer. He was subsequently permitted to file an additional answer, in which he all 3ge=, that he had received a conveyance for the land, from those persons, and had p ocu.ed from Boyce, a release of tne mortgage, so that his title was then complete.
Daviess, &c. answer and say, that they had conveyed the land to Hanna, to enable him to comply wiih the contract.
*22 At the October term, 1825, the circuit court rendered a decree, in which it is said, that there was no cause for rescinding the contract; as Hanna had shown, that he then had a clear and unincumbered title to the land, that Edwards was entitled to a specific execution; and .that, as he had prayed for relief generally, Hanna should, on or before a day named, convey by deed, with general warrant}', the tract in Mercer. The cross-bill of Hanna was dismissed.
To reverse this decree, Edwards prosecutes this writ of error.
The depositions in the cause, except Heard’s and Robert’s, relate to the valuation of the improvements, stock, furniture, &c., on the two tracts, and are not necessary to be considered, they prove no fraud, and throw no light, on any point, important to be decided. Heard says, that he was present, when the contract of exchange was made, and he distinctly recollects to have heard Edwards ask Hanna, if he had paid Montgomery Bell, all of the purchase money, for the land in Mercer, to which Hanna answered, that he had paid every cent of it, and that there was no incumbrance on the land, except a friendly mortgage, executed to Boyce, to secure the property from execution; which he could have released, at any time, and would shortly pause it, to be done.
He says, that Edwards, being detained in the prison bounds at the time, the tract in Mercer was delivered, he, as agent for his father-in-law,4ook possession of it, and kept the establishment at the Springs, in the name of Edwards and himself.
Roberts says, that he was also present, when Ed" wards and Hanna made the contract, and he understood from conversation between the parties, that the tract in Mercer was under incumbrance; to what amount, he did not hear, or had forgotten, but believes, that the incumbrance on that and the tract ip Logan, was supposed to be about equal.
He also, says, that Hanna was, according to the understanding of the contracting parties, to pay him the money for which the last named tract was under lien, if he could, and Edwards was to pay as much towards the release of that, on the other tract. These con *23 flicting statements are utterly irreconcilable; unless upona supposition, that Hanna made to Edwards, different and contradictory statements, on the same subject, during the negotiation, an inferrence, which is very improbable; Nothing has been said against the respectability of either witness, and there is no ground, upon which to conclude, that either has intentionally mis-stated the matter. They must have understood the parties differently, or one has been more accurate in his recollection of it, than the other. However this matter may be, it appears, that each tract was incumbered to about equal amounts.
The mortgage to Boyce, although executed for $ 13000, had, previous to the contract between Hanna and Edwards, been released, except as to .$4038 81 cents, and from an execution, which afterwards issued in favor of Bell, against Hanna, on a judgment against him for money due, as a part of the price of the land, it seems, that the debt due to him, was $3733,making an aggregate of $11271 81 cents, for which the tract at the Springs was incumbered, exclusive of the mortgage to Moseby, Harlan and Taylor, which had been most probably discharged; but of which we shall speak hereafter. Roberts’ deposition shows, that his lien on the Logan tract was for about $11180, for which he received Crockett’s notes from Hanna, in exchange for those of Edwards.
As it is. not pretended, that the existence of the lien which Roberts had on that, tract was concealed, there seems to have been no reason, why Hanna should have endeavored to conceal the fact, that the tract in Mercer was under lien, to about the same amount.
But, although it does not appear, that Hanna waS guilty of fraud in the original contract, for which, a rescisión of it could have been properly decreed, there are other considerations growing out of the nature of his title to the two hundred and twenty seven acre tract, which we shall presently consider, and his subsequent conduct, which would have rendered a rescisión proper, if Edwards had retained the property received from Hanna, so as to be able to re urn it, and if the land in Logan had not been conveyed to Crockett,
'Official copy of a deed which wnsnot recorded in time, is not evidence of its ■execution.
When Bell’s execution was levied on the land ixl Mercer, Hanna permitted a moiety of it to be sold} and bell,-as has been already stated, became the purchaser, and received therefor, a deed, dated in June, 1822, which, of course, rendencd Hanna unable to comply with his contract, with Edwards.
But an examination into the nature and evidence of his title, will still more clearly show, that he was not, at the time of the decree, and probably is not yet able to convey a valid title to the land, of which we are speaking. The patent for it, issued to Luke Vanarsdall, in May 1793.
In August, 1809, a deed of conveyance, purporting to have been 'made by Lucus Vanarsdale and wife, to Montgomery Bell, for a moiety of said tract, was proved by the subscribing witnesses, to have been executed by the. husband, and was admitted to record; it not appearing that the wife had then or since relinquished her right of dower.
In January, 1817, by deed of that date,Lucas Vanarsdall conveyed the other moiety to Thomas D. Owings, which was not recorded-until September, 1818.
In August, 1818, Owings and wife, by deed of that date, conveyed his moiety to Hanna and Harrison Mun-day, in which the right of dower of the wife, was not relinquished.
On the same day, Montgomery Bell conveyed his moiety, to the same persons.
.In February, 1819, Munday and wife conveyed his interest, in the tract aforesaid, to Hanna and A. Fulkerson, in which Mrs. Munday did not relinquish her right of dower. There is no proof showing that Luke, and Lucas Yanarsdall'is the same person; but taking it for granted, that he is, and laying aside all objection, growing out of the unrelinquished rights of dower, it is ■clear, that Hanna did not exhibit sufficient testimony of 'his ability to convey a valid tide, for several reasons.
In the first place, an official copy of the deed from Vanarsdallto Owings, of January, 1817, was not evidence of its execution, because, between one and two years, from its date had expired, when it was admitted to record, and there was no other proof, of its execution.
*25 In the second place, waiving this objection, Hanna could have claimed to be the owner of only three-fourths of the tract. Fulkerson had executed to him, a power to sell and convey his interest in the tract, but when the contract for the exchange took place, he contracted, not for\himself and as agent for Fulkerson, but for himself only. It is true, that he afterwards procured from Fulkerson a writing, which he insists, was a confirmation of the sale by him; but even if it could be so considered, it was not at the time of the sale, binding On Fulkerson.
If it be binding, it would put it, in his and Fulkerson’s ¡power to perform the contract or not, as it might thereafter prove to be advantageous, or otherwise, and if subsequent circumstances had shown it to be of the latter character, there is no reason to believe, that it would have been confirmed.
Having pointed out the foregoing defects of title, we shall notice others growing out of the mortgages and the sale made under execution, when Bell became the purchaser. The deed of mortgage to Boyce, was executed by both Hanna and Fulkerson, and was only conditionally ralcased by Pleasants, as agent for Boyce, tinder a power of attorney.
Subsequent to the purchase by Bell under execution he made a conveyance of it, to J. Briscoe, A. Fulkerson, W. Harrison, S. Daviess and G. Briscóé. The deed from those persons to Hanna, and that from Pleasants as attorney for Boyce, did not pass the title to Hanna. The conveyance according to the terms of each of those deeds, was to be operative, upon condition, that the contract between Hanna and Edwards, should be specifically decreed by court; otherwise, to be void. The decree of the circuit court cannot change the aspect of the case.
The mortgage previously mentioned as executed to Moseby, Harlan and Taylor may have been released, and probably has been, but it has not been proved.
In November, 152% Moseby and Harlan executed an instrument of writing to Hanna, purporting to release the interest which they, with Samuel Taylor, held by deed of mortgage on the two hundred and twenty seven acres, in Mercer, for $3500, and it has been insisted; *26 that a few days before the decree was entered, Taylor did the same.
The execution of these instruments has not been sufficiently established. They are not deeds of conveyance ; and that from Taylor was not attempted to he proved in any other manner, than by the certificate of a justice of the peace, in the the territory of Arkansas that it was acknowledged before him; accompanied by the certificate of the Secretary, that the person before whom it was said tobe acknowledged, was a justice of the peace.
But although, from the foregoing view of the title, if it be correct, it is clear, that the circuit court erred by ■decreeing a specific execution of the contract, on the part of Hanna, compelling Edwards to accept a doubtful and insufficient title; yet we concur with that court, (but not for the reasons assigned in the decree,) that it was not proper for the chancellor to decree a rescisión of the contract, so as to effect Crockett’s title.
He had obtained it fairly, and although he may not have paid the purchase money, he cannot be compelled to yield it.
The mortgage which he executed to Roberts may be enforced; but the land cannot be taken from him, because Hanna .may not be able to comply with his contract with Edwards.
But if the land in Logan had still belonged to Hanna, •and had been therefore in a situation to be returned to Edwards without an improper interference with the rights of others, it would have still been improper, under existing circumstances, to decree a rescisión of the contract, reaching the land in Logan.
Edwards in his answer to Hanna’s cross bill, acknowledges that most of the personal property, which he had got from Hanna at the'Springs, consisting of furniture, &c. had been sold under execution against him, Edwards, and that he had mortgaged the remainder. That property amounted to several thousand dollars; it was property which seems to have been necessary to the profitable use of the land in Mercer, and to the objects contemplated by the contracting parties.
bill by him for : a rescisión of / e oon rao ■ / If one of the \ parties to a | contract rela-S tive to land • or personalty, ; has conveyed , to a third i person an un- j portant part ; of the land .or j personal prop- j erty received by him in \ virtue of the ’ contract, and is unable to restore it, that is an insuper-. able bar to a
Where there ”PP®acrp339t”yb® for reSorting to court of the complain-damages only, the chancel-J.°r °j?0grfl no-redress,
In the case of Durrett vs. Sympson’s representatives, III Mon. 525, it was decided, that the fact, that one of two contracting parties about land, had conveyed to a third person, a house received in part payment of a larger estate, and was therefore unable to restore it, was an insuperable bar to his bill, for a rescisión of the contract.
That case is not directly analogous to the one, under consideration, because there, the property parted with, was land, here it is personal. But we do not conceive, that it should vary the principle. We do not intend to say, that if the property had been of small amount, and considered by the parties, as an unimportant part of the contract, the circumstance of Edwards having put it out of his power to restore, would have presented an .insuperable objection to a rescisión.. But the contract was entire; and it is clear, that the personal constituted a most important part of the contract.. If it be rescinded, then the parties will not be placed in the situation which they previously occupied.
Had'Hanna’s title to the land been proved by the evidence in the cause to be valid, a specific execution of the contract, might have been properly decreed; for although it is apparent, that the main object of his bill was to procure a rescisión of the contract, yet his bill contains a prayer,, that if a rescisión could not be decreed, such other relief might be granted as he might appear to be entitled to in equity. Hanna insisted on his ability, to convey an indisputable title, and with the intention of procuring a decree, compelling Edwards to accept it, exhibited testimonies which he considered as satisfactory. . It has been shown, that in relation to that matter, he was deceived. Now, although Edwards had a right to sue at law, and recover damages for a violation of the contract, it does not thence follow, that it will be improper for the chancellor to ascertain the amount, to which he is entitled, and give him a decree fpl’ it.
Where there seems to be no necessity of to a court of chancery; and the object of a complainant is, for the liquidation of damages only, the chancellor ought not to afford redress; for that is the province of a common law court. But that is not the attitude *28 in which the claim of Edwards is presented. He sougnt a rescisión of the contract. He cannot, for the reasons mentioned, obtain that redress; but it has been already shown that it was not proper to compel him to accept the title offered; and he shows, that he is entitled to relief. There would be, therefore, no propriety in dismissing his bill, and putting him to his common law remedy.
Crittenden, for plaintiff; Daviess, for defendant.
The chancellor having properly possession o.f the case, ought to do complete justice between the parties.
The decree'of the circuit court must he reversed, and the cause remanded to that court, with directions for further proceedings to be had, not inconsistent with this opinion.